# COURT OF APPEALS OF VIRGINIA

Present:    Judges Friedman, Chaney and Raphael
Argued by videoconference

KEVIN J. HORN, ET AL.

v.        Record No. 1973-23-4

JAMES WEBB, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE STUART A. RAPHAEL
MAY 13, 2025

### FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

Kevin J. Horn (Kathryn Meredith Kersey Horn, on briefs), *pro se*.

J. Chapman Petersen (Federico J. Zablah; Chap Petersen &
Associates, PLC, on brief), for appellees.

This case comes to us on appeal from the trial court's entry of a final order after remand from the Supreme Court in *Horn v. Webb*, 302 Va. 70 (2023) ("*Horn I*"). *Horn I* held (among other things) that the trial court erred by failing to find that the Horns had proven their right to a prescriptive easement over the Webbs' waterfront property, entitling the Horns "to dock a boat as well as to maintain the electrical wiring and outlet to charge the boat." *Id.* at 83. The Supreme Court remanded the case for the trial court to enter an order consistent with the Court's opinion. The Horns claim that the trial court's remand order violated the mandate. They also claim that the trial court abused its discretion by declining to reopen the case to consider their claim that the Webbs wrongfully disconnected the wiring and removed the outlet after the mandate had issued, something the Horns claim to have discovered only after the final order had been entered.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

We conclude, however, that the trial court's order on remand faithfully executed the Supreme Court's mandate. And the Horns have failed to demonstrate that the trial court abused its discretion in declining to reopen the case after entering the final order. So we affirm the trial court's judgment.

BACKGROUND

This case involves three adjoining properties in the Barcroft Lake Shores subdivision in Fairfax County: Lot 612, which has direct access to Lake Barcroft; and Lots 613 and 615, which are landlocked. Lot 612 has a pier wall that runs the length of its eastern waterfront boundary, with a wooden dock at the further end. In 1966, the owners of the three parcels entered into an agreement allowing the owners of Lots 613 and 615 to access the lake through an easement across Lot 612. The 1966 easement agreement addressed only access to the lake, not the storage of watercraft on Lot 612 or the docking of a boat at the pier wall. The prior owners of Lots 613 and 615 jointly bought an electric pontoon boat that they tied up at the pier wall on Lot 612. Because Lake Barcroft's rules prohibit gas engines, the prior owners also built electrical infrastructure over their own lots and on Lot 612 to charge the boat's batteries and provide light. The infrastructure included a light pole and electrical outlet at the pier wall.

Appellants Kevin J. Horn and Kathryn Meredith Kersey Horn (the "Horns") purchased Lot 615 in 2005 and acquired a half-interest in the pontoon boat. They operated Lot 615 as a rental property beginning in 2010. Atul Rustgi purchased Lot 613 in 2013, acquiring the other half-interest in the boat. And in June 2017, appellees James and Hong Webb (the "Webbs") purchased Lot 612.

In January 2019, the Webbs asserted that the 1966 easement agreement did not give the owners of Lots 613 or 615 the right to dock a boat at the pier wall, install electric wiring, or store watercraft on the property of Lot 612. Rustgi and the Horns disagreed, leading to two lawsuits.

First, Rustgi sued the Webbs in July 2019 for a declaratory judgment that his uses were permitted by the 1966 easement or, in the alternative, that he had acquired those rights by prescription. *Horn I*, 302 Va. at 76. The Webbs counterclaimed for nuisance, trespass, and declaratory relief. *Id.* The trial court ruled for the Webbs, enjoining Rustgi from docking a boat on their property and requiring him to disconnect the electrical line. *Rustgi v. Webb*, 105 Va. Cir. 199, 210 (Fairfax 2020) (Bernhard, J.).[1] The June 2020 final order required Rustgi to disconnect the electrical lines and outlets within 15 days. The Rustgis disconnected the electricity, apparently by cutting a wire at a junction box somewhere in the system. Rustgi later sold Lot 613 and transferred his half-interest in the pontoon boat to the Horns. *Horn I*, 302 Va. at 76. The order also empowered the Webbs "to dispose of . . . the electrical outlet and electrical line on Lot 612 as they see fit."

Second, in July 2020, the Webbs sued the Horns for trespass, nuisance, and declaratory relief. The Horns counterclaimed, seeking a prescriptive easement to permanently dock a boat and to supply power to the outlet at the pier wall on Lot 612 (Count I) and a prescriptive easement to store watercraft on Lot 612 (Count II). Judge Devine presided at a two-day bench trial that started on September 15, 2021.

In a letter opinion and accompanying order, Judge Devine concluded that the privilege exercised by the Horns and their predecessors of docking a boat at the pier wall was merely permissive, preventing that use from ripening into a prescriptive easement. The court found that the Horns had also failed to prove that they acquired a prescriptive right to store watercraft on Lot 612. The court held the Horns liable for trespass, awarding the Webbs compensatory damages of $8,250 for docking the boat and $3,300 for storing watercraft. In addition, the court

---

[1] Although Judge Bernhard became a member of this Court on January 1, 2025, he has not had any involvement in this appeal.

- 3 -

awarded $45,000 in punitive damages against the Horns. The court also enjoined the Horns from entering Lot 612 for any purpose other than accessing the lake as authorized by the 1966 easement.

On the Horns' appeal, the Supreme Court affirmed in part, reversed in part, and remanded. The Court found that "[t]he Horns established the existence of a prescriptive easement to dock a boat as well as to maintain the electrical wiring and outlet to charge the boat." *Horn I*, 302 Va. at 83. The Court vacated the portion of the compensatory-damage award for trespassory docking, and the entire amount of the punitive-damage award. *Id.* The Court remanded the case "for entry of an order consistent with the judgment." *Id.*

The parties on remand submitted briefing and competing proposed final orders. The Horns asked the court to declare their prescriptive easement rights and to order the Webbs to repair the electrical infrastructure, pay interest on the suspending bond, and pay compensatory damages for loss of use of the boat and the electrical system. The Webbs countered that the final order on remand should hew closely to the Supreme Court's findings.

At a hearing on October 6, 2023, the Horns acknowledged that some of the relief they requested was based on "post-trial conduct." The court said that the Horns might have a claim for post-trial conduct but posited that "it would have to lie in a separately filed matter." The court added that "to the extent [it had] discretion" to entertain new claims, it "would decline to exercise it."

The court entered the final order on October 10, 2023, giving each side seven days to file exceptions. The next day, the Horns moved to modify the final order, claiming to have discovered in the interim that the Webbs, "after" the Supreme Court issued its mandate, had destroyed and removed the electrical infrastructure needed to power the boat. Without forcing the Webbs to re-install the system, the Horns claimed that the order would not be "consistent"

- 4 -

with the mandate. They filed a second motion seeking the same relief on October 27, together with a motion to suspend the final order and to reopen the case. The trial court denied the Horns' motions on October 30, and the Horns noted a timely appeal.

ANALYSIS

The Horns raise ten assignments of error that we group into three categories.

A. *The final order on remand complied with the Supreme Court's mandate (Assignments of Error 1, 2, 4, 6).*

The Horns principally complain that the trial court's final order on remand violated the Supreme Court's mandate to enter an order "consistent with the views expressed in the [Court's] written opinion" in *Horn I*. They say that the order failed to include the injunctive relief they sought in their counterclaim and failed to require the Webbs to "repair and restore" the electrical infrastructure to full working condition.

"In Virginia, an appellate mandate 'is the directive of the appellate court certifying a judgment in a particular case to the court from which it was appealed . . . .'" *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 41 (2022) (quoting *Powell v. Commonwealth*, 267 Va. 107, 128 (2004)). The Court in *Powell* described the trial court's unflagging obligation to abide by the mandate of the appellate court:

> A trial judge is bound by a decision and mandate from [an appellate court], unless [the court] acted outside [its] jurisdiction. A trial court has no discretion to disregard [a] lawful mandate. When a case is remanded to a trial court from an appellate court, the refusal of the trial court to follow the appellate court mandate constitutes reversible error.

267 Va. at 127 (alterations in original) (quoting *Rowe v. Rowe*, 33 Va. App. 250, 257-58 (2000)).

Whether a trial court's final order on remand complied with the appellate court's mandate presents a question of law that we review de novo. *E.g.*, *S. Atl. Ltd. P'ship v. Riese*, 356 F.3d 576, 583 (4th Cir. 2004) ("We review de novo . . . whether a post-mandate judgment of a district

court contravenes the mandate rule, or whether the mandate has been 'scrupulously and fully carried out.'" (quoting 2A Fed. Proc., L. Ed. § 3:1016)); *see also City of Richmond v. Prop. Ventures, Inc.*, 80 Va. App. 538, 547 (2024) (stating that "all questions of law" are reviewed de novo).

Applying de novo review, we hold that the trial court's remand order faithfully executed the Supreme Court's mandate in *Horn I* to "ent[er] an order consistent with the views expressed in the [Court's] written opinion." That opinion said:

> The Horns established the existence of a prescriptive easement to dock a boat as well as to maintain the electrical wiring and outlet to charge the boat.

*Horn I*, 302 Va. at 83. The remand order memorialized that finding, adding details to implement it that neither side contests. The remand order identified three rights arising from the Horns' prescriptive easement—the right to dock a boat, to maintain the electrical wiring and outlet to charge it, and to access the dock, boat, and electrical infrastructure to maintain those rights:

> As of September 15, 2021, a prescriptive easement existed in favor of and for all current and future owners, heirs, and assigns of Lot 615 . . . for purposes 1) of docking a pontoon boat not to exceed 28-feet in length at the boat dock located on Lot 612 at the bottom of the 20-foot path described in the 1966 Express Easement; and 2) to maintain on Lot 612 electrical wiring (including a pole with a light fixture) and outlet to charge the boat; and 3) to obtain access to the dock, boat and electrical infrastructure identified in items 1 and 2 above.
>
> The Court further ORDERS that the prescriptive easement described above shall be recorded among the land records of Fairfax County.

The remand order thus fully implemented the Supreme Court's mandate.

The Horns are incorrect that the remand order limited their prescriptive easement "to a single day in September 2021" and failed to acknowledge that their rights ran "in favor of all current and future owners and assigns of Lot 615." The September 15, 2021 date in the final

order was the trial date, but the recognition of the Horns' prescriptive easement as of that date was forward-looking. The prescriptive easement recognized by the order extends to "all current and *future* owners, heirs, and assigns of Lot 615." (Emphasis added.) In fact, the trial court required that the prescriptive easement be recorded in the land records to alert future purchasers, something that would have been unnecessary had the easement lasted for only a single day.

The trial court's use of the September 15, 2021 trial date was an elegant way to avoid having to sort out the parties' disputed post-trial conduct. The Webbs argued, for instance, that the Horns had abandoned the easement by not docking their boat during their prior appeal. The Horns countered that they had to move the boat because of the trial court's injunction. Although the trial court was skeptical of the abandonment claim, it chose the September 15, 2021 trial date as a date-certain to fix the Horns' prescriptive easement to avoid having to evaluate the parties' post-trial disputes. Doing so in no way meant that the Horns' prescriptive easement expired a day later.

In short, *Horn I* established the Horns' prescriptive easement to dock a boat and maintain the electrical wiring and outlet to charge it on Lot 612. That easement benefits the Horns and all "future owners, heirs, and assigns of Lot 615." That forward-looking property right will continue indefinitely, absent agreement by the owners of Lot 612 and 615 to a different arrangement or another period of prescription. But as noted at oral argument here, it would take prescriptive acts adverse to the Horns' rights for the requisite period—"at least 20 years," *see Horn I*, 302 Va. at 77—to dispossess the Horns of their prescriptive easement.

We disagree with the Horns that the trial court erred by declining their request to include in the remand order "the injunctive . . . relief that the Horns specifically requested" in their counterclaim. To be sure, the Horns' counterclaim requested "[a] prohibitory injunction" barring current and future owners of Lot 612 "from removing or destroying the electrical outlet and light

pole," and "[a] mandatory injunction" that the Webbs "repair and restore to working order the electrical outlet and light pole." But the Supreme Court's opinion in *Horn I* was silent about injunctive relief. And since *Horn I* did not address it, the trial court likewise committed no error by not addressing it either.[2]

### B. The Horns have failed to support their request for post-trial damages and interest related to the suspending bond (Assignments of Error 9, 10).

The Horns argue that the trial court erred by failing to award them certain compensatory damages and interest. The Horns seek compensatory damages of $500 per month for the 27 months during the litigation that they were unable to dock their boat on the Webbs' property. They also seek $4,340 in interest on a portion of the $60,000 suspending bond they had to post in *Horn I*. They reason that, since the Supreme Court reversed all but $3,300 of the compensatory-damage award, they should recover interest on the portion of the $60,000 bond that they should not have been required to post. The Webbs counter that "the Horns fail to identify a single legal basis that would support their request and no such basis exists."

The Webbs have the better side of the argument. The Horns' brief does not cite any "principles of law and authorities," Rule 5A:20(e), to show that *Virginia* law supports the right to the compensation they claim. The law is far from settled about the rights of a successful appellant to compensation relating to the bond it had to post to suspend execution of the judgment. Under federal law, a prevailing appellant is entitled to recover as costs the premium it had to pay for a suspending bond. *See* Fed. R. App. P. 39(e)(3). But there is no such

---

[2] The Webbs also argue that the law-of-the-case doctrine bars the Horns' claim that the trial court erred in failing to include injunctive relief in the remand order, since the Horns failed to argue their entitlement to such relief in their appeal in *Horn I*. We do not need to reach that question in light of our finding that the trial court's remand order complied with the mandate in *Horn I* and our finding below that the trial court did not abuse its discretion by declining to consider matters other than entering an order consistent with the Supreme Court's opinion.

corresponding provision in the Virginia Code or rules of court.[3]  We are not willing to create new theories of compensation for a successful appellant without full briefing on whether such theories are supported by Virginia law.  Because the Horns' "failure to cite any supporting legal authority is 'significant,' we treat [these] argument[s] as defaulted." *Moncrieffe v. Deno*, 76 Va. App. 488, 503 (2023) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 681-82 (2022)).

### C. The trial court did not abuse its discretion by declining to reopen the case and award damages based on the Webbs' alleged misconduct after the mandate issued (Assignments of Error 2, 3, 4, 5, 7, 8).

The Horns' remaining assignments of error contest the trial court's decision not to address their claims relating to the Webbs' alleged misconduct after the Supreme Court issued its mandate in *Horn I* on May 31, 2023.  The Horns contend that, after the mandate issued, the Webbs disabled the electrical connections and removed the electric outlet and light pole.  The Horns claim to have not discovered that fact until after the trial court issued the final order on remand.  The Webbs' alleged misconduct, say the Horns, warranted the trial court's reopening the case, imposing compensatory damages of $100,000 and punitive damages of $300,000, and amending the final order to require "reinstallation" of the electrical connection and light pole.

The Webbs' counsel asserted below that the light pole and electrical connections had been removed "years before," under the Fairfax Circuit Court's 2020 decision in *Rustgi*, 105 Va. Cir. at 199.  The final order there directed Rustgi to "disconnect any electrical lines and outlets that run to and from Lot 613 and Lot 612 within fifteen . . . days."  That order also gave the Webbs "the right to dispose of all items on Lots 612 including, but not limited to, the electrical outlet and electrical line on Lot 612 as they see fit."

---

[3] In 2015, a study committee of the Boyd-Graves Conference recommended amending the Virginia Code to "mak[e] the cost of bond premiums a recoverable cost," but that recommendation was rejected by the full Conference.  *See* Minutes of the 2015 Conference, *2016 Boyd-Graves Conference Booklet* at 8 (2016), https://perma.cc/J35V-Z68N.

As confirmed at oral argument here, the actual date that the light pole was removed and the electrical connection disabled remains a disputed fact, including whether that happened before or after the mandate in *Horn I*. Mr. Horn testified at the September 15, 2021 trial that he did not know whether the electrical outlet had been disconnected following the *Rustgi* decision. The Horns' October 27, 2023 motion to modify the final order contained an unsworn allegation that Mrs. Horn visited the easement area with an electrician in June 2023, and the electrician restored the power. The motion further alleged that Mr. Horn discovered on October 11, 2023— the day after the final order was entered—that the Webbs had dismantled the wiring and removed the light pole and power outlet. But the Horns' unsworn allegations at that stage of the proceeding were merely that—allegations.

The Horns, understandably, would like to avoid another round of litigation by having their post-remand disputes resolved in this case. But the question posed in this appeal is whether, when presented with the Horns' unsworn allegations after the final order had already been entered, the trial court abused its discretion in declining to reopen the case to probe their new claims.

Judge Devine's October 30, 2023 order did not explain why he declined to vacate the final order and reopen the case. But taking all inferences in the light most favorable to the prevailing party, *see Commonwealth v. Holland*, __ Va. __, __ (Jan. 16, 2025), we infer that he acted consistently with his stated reasoning at the October 6, 2023 hearing. Judge Devine there made clear that he intended to enter a final order to effectuate the Supreme Court's mandate. While Judge Devine said at one point that he thought he lacked discretion to address matters outside the mandate, he clarified that even if he had such authority, he "would decline to exercise it at this time and have you pursue your remedies elsewhere."

We find no abuse of discretion in the decision to not reopen the case after the final order was entered. For one thing, the Supreme Court's mandate was narrow, requiring "entry of an order consistent with the views expressed in the written opinion." As shown above, the remand order faithfully complied with that directive.

For another thing, the Horns have provided no authority to show that a trial court abuses its discretion by declining to reopen a case after the final judgment has been entered based on one side's unsworn accusations of misconduct by the other side. *See* Rule 5A:20(e). We can assume for argument's sake that the trial court *could have* exercised its discretion to address post-remand disputes that fell outside the scope of the mandate. *See Sidya*, 301 Va. at 41 ("The mandate does not prohibit a trial court on remand 'from acting on matters not constrained by the language of the mandate, construed in light of the appellate court's opinion.'" (quoting *Powell*, 267 Va. at 128)). Still, the Horns have presented no authority to show that a trial court is obligated to reopen the case in this situation or that the court abuses its discretion by declining to resolve new disputes when doing so is unnecessary to implement the appellate court's ruling.

That the trial court did not abuse its discretion here is bolstered by the parties' concessions to us at oral argument that their post-mandate disputes can be addressed, if necessary, in future litigation. The parties' ability to address those claims in the future supports the trial court's decision not to take on new disputes that arose only after the final order had already been entered.[4]

## CONCLUSION

In sum, the trial court's final order on remand faithfully executed the Supreme Court's mandate in *Horn I*. And the trial court did not abuse its discretion by declining to reopen the

_____

[4] Although the Webbs requested on brief that the Court impose sanctions on the Horns for pursuing this appeal, the Webbs withdrew that request at oral argument.

- 11 -

case to consider the Horns' unsworn allegations of misconduct that were lodged only after the final order had already been entered.

*Affirmed.*